IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Seanette Ida Coaxum, | ) | Civil Action No. 8:16-cv-01099-TLW-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

On December 11, 2012, Plaintiff filed applications for DIB and SSI, alleging disability beginning January 8, 2012. [R. 165–179.] The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 71–86, 89–110.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on October 8, 2014, ALJ Carl B. Watson conducted a de novo hearing on Plaintiff's claims. [R. 32–67.]

The ALJ issued a decision on November 21, 2014, finding Plaintiff not disabled. [R. 17–27.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through June 30, 2016, and had not engaged in substantial gainful activity since January 8, 2012, the alleged onset date. [R. 19, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: status post right knee meniscus tear with chondromalacia, low IQ, and dyslexia. [R. 19, Finding 3.] The ALJ also found Plaintiff had a history of cervical cancer in remission, low back pain and anxiety, but that these non-severe impairments were controlled with medication and/or conservative measures. [*Id*.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20, Finding 4.] The ALJ specifically considered Listings 1.02, 12.02, and 12.06. [R. 20–22.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work (light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing, or walking for 6 hours each in an 8-hour workday) as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only occasionally push and pull with her right leg. The claimant cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, as well as occasionally kneel, crouch, and crawl. The claimant must avoid working at unprotected heights. The work, which she can do, is limited to occupations, which involve the performance of simple, routine, repetitive tasks, in an environment where changes are infrequent and are introduced gradually and where she is not required to read at more than at a third grade level.

[R. 22, Finding 5.] At Step 4, the ALJ noted Plaintiff had no past relevant work[4]. [R. 26, Finding 6]; but based on her age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 26, Finding 10]. On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from January 8, 2012, through the date of the decision. [R. 27, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined. [R. 1–6. ] Plaintiff filed this action for judicial review on April 8, 2016. [Doc. 1.]

### THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ failed to conduct a full and fair inquiry as to whether Plaintiff's impairments

---

[4]The ALJ is directed to clarify his finding that Plaintiff had no past relevant work. The record indicates that Plaintiff worked for 15 years in house keeping, cleaning motels, hospitals or condos. The VE expert found her prior work experience to be unskilled, falling under DOT number 381.687-018 (industrial cleaner– medium, SVP of 2) or DOT number 323.687-014 (housecleaning–light, SVP of 2). [R. 57.]

met or were equal to Listing 12.05 (intellectual disability), failed to consider all of Plaintiff's impairments and their combined effect on Plaintiff's ability to sustain gainful employment, failed to conduct a proper credibility analysis, and failed to properly weigh the opinion of Plaintiff's treating physician and non-physician professional. [*See* Doc. 18.] Plaintiff asks this Court to reverse the ALJ's decision for further consideration in accordance with SSA regulations and governing case law. [*Id.* at 28.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ properly found that Plaintiff's impairments did not meet or equal Listing 12.05C, adequately considered Plaintiff's impairments in combination in finding him not disabled, properly evaluated Plaintiff's credibility, and adequately explained his consideration of the opinion evidence. [*See* Doc. 19.] The Commissioner asks this Court to affirm the decision of the ALJ. [*Id.* at 28.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than

a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a

rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals

Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health*

& *Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the

parties must return to the court after remand to file modified findings of fact.  *Melkonyan*,

501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter

a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67

F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a

claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a

final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period of
> not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for

pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

<u>**APPLICATION AND ANALYSIS**</u>

**Brief Medical History**

Plaintiff filed an application for DIB alleging a sudden onset of back and knee injury in January 2012, as well as dyslexia. [R. 201.] Plaintiff contended her leg and knee pain made it difficult for her to work, and that her dyslexia made reading and comprehension difficult. [R. 219.] Plaintiff's application indicated she attended special education classes at Brentwood High School in Brentwood, New York from 1985 through 1989. [R. 202.] Plaintiff also indicated that she worked on job in the past 15 years as a housekeeper in hotels and hospitals from 2000–2012, 5-hours per day, 5-days per week for $8.00 per hour. [*Id*.] She also noted that she had no mental conditions, including emotional or learning problems. [R. 204.] Plaintiff indicated that she had reconstructive ACL surgery (knee surgery) in November 2012 and that she cannot bend, stoop or climb, and was still recovering. [R. 208.]

Treatment records show that on June 8, 2011, Plaintiff was seen at the Medical University of South Carolina ("MUSC") for knee pain after cabinets fell off of a wall and hit her right knee. [R. 254.] X-rays were taken but there was no evidence of fracture. [R. 255.] Plaintiff was assessed with knee pain. [*Id*.] On January 8, 2012, Plaintiff was seen at MUSC after she slipped on a rug at work and injured her knee and lower back. [R. 252.] Plaintiff was assessed with knee and lower back sprain and discharged. [R. 253.]

On January 19, 2012, Plaintiff was seen by Dr. Don Stovall ("Dr. Stovall") at Low Country Orthopaedics & Sports Medicine with complaints of persistent lower back pain and right knee pain after slipping on carpet and twisting her knee. [R. 266.] Plaintiff complained of moderate aching pain in the right knee and had some associated swelling in the knee. [*Id*.] Plaintiff's pain was aggravated with attempted range of motion of the knee and with putting weight on her lower extremity. [*Id*.] Plaintiff had been unable to straighten out her knee since the fall and had been in a knee immobilizer and on crutches. [*Id*.] She also complained of mild to moderate aching in her lower lumbar region on the right, but did not have any significant radiation of pain in the lower extremities. [*Id*.] Plaintiff was assessed with lumbar contusion and strain, as well as effusion of the right knee with internal derangement. [R. 267.] Dr. Stovall recommended an MRI scan of the right knee to rule out internal derangement and conservative treatment with medication, heat, and therapy for her back depending on ongoing symptoms. [*Id*.] On February 1, 2012, Dr. Stovall reported that an MRI of Plaintiff's right knee showed a meniscus tear with a previous ACL tear. [R. 265.]

On February 15, 2012, Plaintiff was seen by Dr. Richard Zimlich ("Dr. Zimlich") at Low Country Orthopaedics & Sports Medicine for her right knee pain. [R. 264.] Dr. Zimlich noted that Plaintiff had a pre-existing injury of an ACL tear, but that there was no evidence of edema or bleeding. [*Id*.] Plaintiff's injury had apparently worsened with her meniscal injury. [*Id*.] According to treatment notes, Plaintiff's "guarding" limited her exam as she was tender to palpation medially and laterally, with mild swelling. [*Id*.] Based on her MRI and history, Dr. Zimlich recommended that an ACL reconstruction and meniscectomy be scheduled. [*Id*.]

On July 25, 2012, Plaintiff was seen by Dr. James Spearman ("Dr. Spearman") at Low Country Orthopaedics & Sports Medicine for her right knee pain. [R. 263.] Plaintiff had swelling and pain in her right knee, along with decreased range of motion; she also had instability with positive pivot shift and positive anterior drawer. [*Id*.] Plaintiff was diagnosed with a torn ACL and was scheduled for surgery. [*Id*.] Plaintiff was given an intra-articular injection of lidocaine and Depo-Medrol to see if it would give her some relief while awaiting approval for ACL reconstruction and meniscectomy. [*Id*.]

On November 16, 2012, Dr. Spearman performed an arthroscopic partial medial meniscectomy, a chondroplasty, and an anterior curciate ligament reconstruction with patellar tendon graft on Plaintiff's right knee. [R. 268.] On December 10, 2012, Plaintiff saw Dr. Spearman on follow up after ACL reconstruction on the right knee with complaints of continued severe pain. [R. 262.] Plaintiff appeared to have minimal swelling, had full extension with no gross instability, but had difficulty flexing past 90 degrees. [*Id*.] Dr. Spearman recommended Plaintiff continue with physical therapy with range of motion and strengthening; and to continue with her brace and okayed her to use her crutches. [*Id*.]

Plaintiff underwent physical therapy at the Rehabilitation Centers of Charleston. [*See* R. 271–311 (*Exhibit 3F*).] On December 3, 2012, Plaintiff presented to physical therapy for the evaluation and treatment of her right knee. [R. 275.] At the time, Plaintiff complained she was unable to bear weight on her right lower extremity. [*Id*.] Physical therapist Robert Gibb DPT ("PT Gibb") noted that Plaintiff demonstrated signs and symptoms consistent with increased pain, decrease range of motion ("ROM"), decreased strength, poor balance, and gait deviations limiting her ability to perform job duties, activities of daily living ("ADLs"), and

recreation. [R. 276.] PT Gibb planned to have Plaintiff come in 3 times per week for ROM, strengthening, stability, proprioception, balance and gait training. [*Id*.]

On December 6, 2012, Plaintiff saw PT Gibb and reported that she had been trying to do her home exercise program ("HEP"), but that it hurt too much to bend, rating her pain at an 8 out of 10. [R. 277.] During PT, the increase in pain caused Plaintiff to cry. [*Id*.] PT Gibb noted that Plaintiff continued to have severe pain and was limited significantly in her ROM, particularly flexion and extension. [*Id*.] Plaintiff returned again on December 11, 2012, indicating that she was trying to do her HEP, but again was limited by the amount of pain, her pain again being rated at an 8 out of 10. [R. 278.] PT. Gibb noted that Plaintiff continued to have severe pain and significantly limited ROM. [*Id*.] Again, on December 12, 2012, Plaintiff saw PT Gibb reporting that her pain was an 8/9 out of 10. [R. 279.] PT Gibb noted Plaintiff would benefit from a static progressive splinting for increased flexion ROM. [*Id*.]

On December 14, 2012, Plaintiff reported to PT Gibb that she was trying to bend her knee at home but could not due to the pain. [R. 280.] PT Gibb noted that Plaintiff was very apprehensive about flexing her knee secondary to pain, and was again educated on the importance of her performing her HEP every day to improve her knee ROM in both planes. [*Id*.] Treatment notes from December 19, 2012, indicate that Plaintiff's knee flexion ROM was starting to improve and that she was able to start light strengthening. [R. 281.] Treatment notes from December 26, 2012, indicate Plaintiff continued to improve with weight bearing tolerance, her ability to perform 10 heel raises in bilateral stance although she had continued pain throughout, and functioning was improving in all areas. [R. 282.]

On December 28, 2012, physical therapy assistant Terry Michalak, PTA ("PTA Michalak") noted that Plaintiff's pain was a 9 out of 10, and that she was guarded during stretching. [R. 283.] On January 3, 2013, Plaintiff's pain was again noted to be a 9 out of 10, and PTA Michalak noted that Plaintiff's knee flexion was very slow to improve with continued apprehension about bending her knee. [R. 284.] Treatment notes from January 9, 2013, reference Plaintiff having transportation problems getting to her appointments. [R. 285.] PT Gibb noted that Plaintiff continued to have pain limiting her knee flexion, and that she had slow progress due to her limited adherence to her HEP and poor attendance. [*Id*.]

On January 11, 2013, Plaintiff described her pain as an 8 out of 10, engaged in heavy guarding, but was able to rotate pedals on a bike with therapist assistance. [R. 286.] PT Gibb (now identified as a doctor of physical therapy "DPT") noted that Plaintiff was slowly improving weight bearing and gait. [*Id*.] On January 16, 2013, Plaintiff described her pain as a 7.5/8 out of 10 and continued to be guarded due to pain. [R. 287.] Treatment notes through March 25, 2013, show that Plaintiff continued therapy with pain noted at a 7/8 out of 10, had slow progress, ambulated with her knee fixed in approximately 2 degrees of flexion, and used a quad cane. [R. 288–311.] Plaintiff was advised that if PT did not progress, further PT could not be recommended and that she needed to become very aggressive with her HEP and her exercises in therapy. [R. 309.] Plaintiff continued, however, to demonstrate increased anxiety and poor tolerance to pain. [*Id*.] Treatment notes from March 25, 2013, through Plaintiff's discharge on April 30, 2013, continued to indicate that Plaintiff was progressing slowly with a plateau in her knee flexion and very poor tolerance to stretching to gain further ROM; that Plaintiff continued to ambulate with a quad cane although they told her she was safe to ambulate without it; and that Plaintiff continued

to ambulate with increased knee flexion and flat foot contact although she was able to correct with verbal cuing to nearly normal patter at a slower pace.   [R. 313–24.]

On February 4, 2013, Plaintiff was seen by Dr. Spearman on a 4-week follow up for her knee pain.  [R. 260.]  Plaintiff had moderate swelling, indicated her pain was at a 3-5 and still had substantial loss of flexion.  [*Id*.]  Treatment notes reflect fatigue, fever, night sweats, difficulty walking, dizziness, headache, anxiety and depression.  [R. 261.]

On April 15, 2013, Plaintiff was seen on follow up by certified family nurse practitioner Savannah M. Spearman ("Nurse Spearman"), at Low Country Orthopaedics & Sports Medicine, with complaints of burning pain in her right knee with no radiation, and associated spasms and swelling.  [R. 325.]  Plaintiff experienced active painful range of motion, but her knee showed no evidence of instability.  [*Id*.]  On examination, Plaintiff was positive for swelling and spasms.  [R. 327.]

On May 28, 2013, Plaintiff reported to Dr. Spearman that she was still having pain in her knee and that she could not stand for long without it hurting. [R. 328.] Plaintiff was still using a cane to ambulate and indicated that her pain had not improved.  [*Id*.] Dr. Spearman noted that Plaintiff was still unable to fully flex her knee, but had no instability.  [*Id*.]  Plaintiff, however, continued to complain about pain and an inability to ambulate.  [*Id*.] Plaintiff underwent an FCE which indicated that the exam was unreliable and labeled her as capable of light physical duty.  [*Id*.]  Dr. Spearman noted that Plaintiff had reached maximum medical improvement and was being discharged with a partial permanent impairment of 7% in the lower extremity having "no restrictions of sedentary work with no prolonged standing or walking." [*Id*.]

On July 29, 2013, Jean R. Hutchinson, M.Ed.[9], a certified rehabilitation counselor certified in vocational evaluation, ("Hutchinson") completed an employability evaluation for Plaintiff. [R. 344–49.] Hutchinson reviewed Plaintiff's educational background, work history and description of her injury and medical condition. [*See* R. 344–45.] Hutchinson summarized Plaintiff's functional activities, activities of daily living, as well as her prior work history. [*See* R. 345–47.] After her review, Hutchinson made the following findings or conclusions regarding Plaintiff's employability:

* Plaintiff's age should not affect her ability to adapt to a new work environment or perform substantial work tasks

* Plaintiff's educational performance (reading at a third grade level and doing math at a fourth grade level) is considered as illiterate. She was found to be able to understand and follow simple instructions and to need instructions through rote learning and repetition, small group instruction, clearly defined rules, and multi-sensory approach.

* Plaintiff was found to be functioning with an IQ score of 65 and in the fourth percentile, indicating she would have difficulty learning other than very simple and repetitive tasks.

* Plaintiff has only performed unskilled work and has no acquired work skills that can be attributed to unskilled work; she has no transferable skills.

* Plaintiff has significant physical limitations (citing a Functional Capacity Evaluation ("FCE") dated April 30, 3013)[10] with a post-test pain level of 9 out

_____

[9]The qualifications of Jean Robertson Hutchinson, M.Ed., CRC, CVE, are fully described in Exhibit 7F. [R. 350–52.]

[10] The April 30, 2013 FCE limited Plaintiff to frequent sitting, occasional standing/walking, frequent reaching, no balancing, frequent bending, no squatting, no kneeling, occasional climbing stairs, but no climbing ladders or crawling. [R. 353.] The FCE also limited Plaintiff's back lifting to 15 lbs, power lifting to 25 lbs, shoulder lifting to 20 lbs, overhead lifting to 15 lbs, two hand carrying to 25 lbs, and pushing/pulling to 32/25 lbs, all occasionally. [*Id*.] The FCE also limited Plaintiff's back lifting to 8 lbs, power lifting to 13 lbs, shoulder lifting to 10 lbs, overhead lifting to 8 lbs, two hand carrying to 13 lbs, and pushing/pulling to 16/13 lbs, all frequently. [*Id*.] On a constant basis, Plaintiff was limited

24

of 10, indicating very significant pain, as well as significant pain the day after the FCE as well.

*   Hutchinson noted that Dr. Spearman indicated Plaintiff had no restrictions to sedentary work with no prolonged standing or walking.

*   Considering these factors (younger age, illiteracy, very low level of intelligence, past work experience, and significant physical limitations and ongoing pain for more than a year), Hutchinson opined that Plaintiff is unable to return to any past employment; has no transferable skills; is not able to engage in an 8-hour workday in a substantial number of jobs and cannot perform work tasks on a sustained basis.

[R. 347–49.]  Hutchinson concluded that Plaintiff was unable to meet all of the exertional requirements of sedentary work and concluded that she was unemployable, unable to compete on the open job market, and unable to perform substantial gainful work activity. [R. 349.]

On December 16, 2013, Plaintiff was seen by Dr. Charles Effiong ("Dr. Effiong") with Franklin C. Fetter Family Health Center ("FFH") with complaints of severe lower back pain that occurs randomly and began after she fell at work and re-injured her right knee.  [R. 340.]  On examination, Plaintiff was positive for back and joint pain, and negative for swelling and muscle weakness.  [R. 341.]  Dr. Effiong noted that Plaintiff walked with a cane [R. 341], had tenderness in the lumbar spine, as well as right knee joint swelling and tenderness but with full range of motion [R. 342].  Dr. Effiong noted that Plaintiff's back pain was likely related to her unstable gait from her knee joint pain. [R. 343.]

On June 23, 2014, Plaintiff was seen by Dr. Effiong with complaints of right knee and lower back pain and reports of intermittent swelling.  [R. 336.]  On exam, Plaintiff was

---

to back lifting at 3 lbs, power lifting at 5 lbs, shoulder lifting at 4 lbs, overhead lifting at 3 lbs, two hand carrying at 5 lbs, and pushing/pulling at 6/5 lbs. [*Id.*]

positive for joint pain and negative for welling and muscle weakness. [R. 337.] On September 3, 2014, Dr. Effiong saw Plaintiff again with complaints of right knee pain and dizziness, as well as a choking sensation that comes and goes. [R. 332.] On examination, Plaintiff was positive for anxiety and joint pain. [R. 333.] On musculoskeletal exam, Plaintiff had normal range of motion, muscle strength in all extremities with no pain on inspection. [R. 334.]

At the hearing before the ALJ, Plaintiff's attorney explained that Plaintiff obtained a diploma of attendance from high school, was in special education classes, and never graduated. [R. 35.] Plaintiff's attorney explained that she read on a third-grade level and did math on a 4.5 grade level. [*Id*.] Plaintiff testified that she was in special education from elementary through high school. [R. 42.] Whenever Plaintiff applied for a housekeeping job, she would take the application home for someone else to complete for her as she was incapable of completing the application on her own. [*Id*.] Plaintiff testified that she could not read and that her daughter helped her with adding/subtracting. [R. 43.]

Plaintiff testified that after knee surgery in November 2012, she still had problems getting around, standing too long, or "doing this or doing that" due to pain. [R. 38.] Plaintiff also testified that she is dyslexic and that it affects her ability to read and limits her to "hands-on" type things. [*Id*.] Plaintiff explained she does not have a drivers license because she cannot read to get one. [R. 39.] Her sixteen year old daughter helps her shop and do house chores. [*Id*.] Plaintiff testified she might put dinner on; do light cleaning; but, otherwise, relaxes with her knee up on top of something. [R. 40.] Plaintiff testified that she has also used a cane since her accident. [R. 44.] She testified that she does not have insurance and so the Fetter Clinic (a low cost medical clinic) is the only place she can afford

to go right now. [R. 45.] Plaintiff testified that her knee has gotten worse since 2012 based on the amount of pain she has during the day. [*Id*.] Plaintiff testified that her pain increases when she moves around a lot and that her knee swells up like a grapefruit. [R. 47.] She also testified that she feels "pressure" in her knee when she stands too long and that it feels as if it will give out. [R. 48.]

**Consideration of Plaintiff's Impairments in Combination**

Plaintiff contends the ALJ's decisions should be remanded because the ALJ failed to consider the combined effects of Plaintiff's significant physical impairments that limit her mobility and cause chronic pain and her mental impairments which significantly limit her ability to manage and cope with her condition. [Doc. 18 at 11–12.] Plaintiff suggests that Plaintiff's mental limitations meet Listing level severity and the ALJ should have considered her overall condition, and her lack of capacity to consistently perform in the work force, in determining her RFC. [*Id*. at 12.] The Court agrees.

### *ALJ's Consideration of Impairments in Combination*

The ALJ found that Plaintiff had a "severe combination of impairments" including status post right knee meniscus tear with chondromalacia, low IQ and dyslexia. [R. 19, Finding 3.] The ALJ also found that Plaintiff had non-severe impairments of a history of cervical cancer in remission, low back pain, and anxiety, which he found were controlled by medication and/or conservative measures. [R. 20.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id*.] The ALJ expressly considered Plaintiff's right knee impairment under Listing 1.02 *(major dysfunction of a joint)*, and

considered Plaintiff's "mental impairments" under Listings 12.02 (*affective disorder*) and 12.06 (*anxiety related disorder*). The ALJ concluded that

> While the combination of the claimant's impairments imposes some limitations, there is no indication in the record that the claimant's ability to sustain consistent function has been complicated by the combination of these impairments. There is no evidence that the combination of the claimant's impairments imposes greater limitations than those established in the residual functional capacity stated below.

[R. 22.]

At Step 4, the ALJ explained his consideration of evidence related to Plaintiff's right knee impairment, Plaintiff's activities of daily living, and Hutchinson's employability evaluation. [R. 23–25.] The ALJ's decision provided essentially no discussion of his consideration of Plaintiff's low IQ (under Listing 12.05 or in any other manner) or dyslexia, both of which the ALJ considered severe impairments, on her ability to work; and the ALJ provided no discussion of Plaintiff's non-severe impairments on her ability to work. While the ALJ concluded that there is "no evidence that the combination of the claimant's impairments imposes greater limitations than those established in the residual functional capacity" [R.22], the ALJ's decision fails to direct the Court to the evidence supporting this determination.

### *Discussion*

After a thorough review of the record and applicable law, the Court agrees with Plaintiff that the ALJ failed to adequately explain his evaluation of the Listings and the combined effects of Plaintiff's impairments. As an initial matter, to determine whether a claimant's impairments meet or equal a listed impairment, the ALJ must identify the relevant listed impairments and compare the listing criteria with the evidence of the claimant's

symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination").

In *Walker v. Bowen*, the Fourth Circuit Court of Appeals remanded the plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the impairments. *See Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989). There, the ALJ found that the plaintiff suffered from several ailments and noted the effect of each impairment separately, and the ALJ concluded that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4." *Id*. at 49. The Court rejected this conclusion as inadequate because the ALJ neither analyzed nor explained his evaluation of the cumulative effect of the claimant's impairments. *Id.* at 49–50. As the Court noted, "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether such impairment if considered separately' would be sufficiently severe." *Id*. (*quoting* 42 U.S.C. § 423(d)(2)(c) and *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989)). The Court noted that "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id*. (*citing Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir. 1985)).

Similarly, in *Reid*, the Fourth Circuit Court of Appeals explained the ALJ's duty to adequately consider and explain a claimant's impairments in combination. *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014). The Court explained that the ALJ had

meticulously described the severe impairments and considered whether the three impairments cumulatively would equal in severity a listed impairment. *Id*. The Court quoted part of the ALJ's decision, pointing out that the ALJ had specifically mentioned three types of impairments (obesity, degenerative disc disease status post fusion, and mental health condition) and whether they affected the claimant's ability to ambulate or perform fine or gross motor movements. *Id*. The Court explained that, based on that analysis, the ALJ concluded that the claimant did not have a combination of impairments that met or medically equaled one of the listed impairments, and the ALJ's decision satisfied the Act's requirements and the guidance set forth in *Walker*. *Id.*

Judges in the District of South Carolina have reiterated the importance of the ALJ providing an adequate explanation of the evaluation of the combined effects of the impairments. In *Locke*, for instance, the Court stated with respect to Step 3 that the ALJ's:

> explanation must include more than a "generic declaration that '[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.' " *Brown v. Astrue*, No. 11–cv–03245, 2013 WL 642189, at * 10 (D.S.C. Jan. 31, 2013), adopted by 2013 WL 645958 (D.S.C. Feb. 21, 2013).
>
> In the present case, the ALJ determined at step three of the sequential evaluation process that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 16. This language precisely mirrors the language that was found wanting in *Brown*. As in *Brown* and *Walker*, the ALJ in this case failed to analyze the cumulative effects of Locke's severe impairments. Instead, he simply noted that each of Locke's severe impairments do not, by themselves, meet or equal the listed impairments. This explanation, and the conclusory statement that Locke's combination of impairments does not meet or equal the listed impairments, fails to meet the level of

analysis required by *Walker* and its progeny.  As a result, the court cannot discern whether the ALJ's decision was supported by substantial evidence.  Remand is appropriate.

*Locke v. Colvin*, No. 6:12-cv-02751-DCN, 2014 WL 897342 (D.S.C. March 6, 2014).

Likewise, in *Alonzeau*, the Court noted:

> Even if one could infer that the ALJ considered . . . the cumulative effect of all of Plaintiffs impairments from the ALJ's listing of various medical observations in his analysis of the Plaintiff's RFC, the ALJ failed to adequately explain his evaluation of any cumulative effects. As such, Plaintiffs claim should be remanded to the Commissioner for proper explanation of the ALJ's evaluation of the combined effect of Plaintiff's impairments with respect to whether Plaintiff's impairments meet a listing.

*Alonzeau v. Astrue*, C/A No. 0:06-2926-MBS-BM, 2008 WL 313786, at *3 (D.S.C. Feb. 1, 2008).

In the instant case, the ALJ failed to provide a discussion of Plaintiff's impairments that meets the analysis required by *Walker* and its progeny.  It appears the ALJ focused mainly on Plaintiff's severe right knee impairment in making his findings without specific reference to any other limitations.  For example, the ALJ's decision provided essentially no discussion of his consideration of Plaintiff's dyslexia, which the ALJ considered a severe impairment, on her ability to work.  And, the ALJ provided no discussion of Plaintiff's non-severe impairments on her ability to work.  While the ALJ in a cursory manner concluded that there is "no evidence that the combination of the claimant's impairments imposes greater limitations than those established in the residual functional capacity" [R.22], the ALJ's decision fails to sufficiently discuss the consideration of the combination of impairments and to direct the Court to the evidence supporting this determination.

Furthermore, Plaintiff contends the ALJ should have found that she meets the requirements of Listing 12.05C.  Listing 12.05C reads as follows:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> ....

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  To meet Listing 12.05, a claimant must satisfy the "diagnostic description" in the introductory paragraph ***and*** any one of the four sets of criteria—A, B, C, or D.  *Id.* § 12.00A (emphasis added).  Thus, in order to meet Listing 12.05C, the claimant must establish he has an IQ between 60 and 70 and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. § 12.05C.

While the record evidence shows that Plaintiff was in special education classes all of her life and determined to be illiterate, received a certificate of attendance rather than a diploma or GED, and was assessed an IQ score of 65, the ALJ failed to explain his consideration of Listing 12.05C in assessing the severity of Plaintiff's low IQ impairment. The ALJ's failure to identify this listing as being relevant to his consideration, and his failure to explain the affect of Plaintiff's severe impairment of a low IQ on her ability to persist in

a work environment, particularly in light of his finding that Plaintiff had moderate difficulties in concentration, persistence and pace[11], makes it impossible for the Court to find that the ALJ's decision is supported by substantial evidence.

**Chronic Pain**

Plaintiff argues the ALJ failed to sufficiently consider Plaintiff's chronic pain in assessing her ability to tolerate her physical work conditions and in assessing her credibility. [Doc. 18 at 12, 14–17.] The Court agrees.

### *Discussion*

As previously stated, under the "pain rule" applicable within the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Accordingly, the ALJ must use a two-step analysis in

---

[11]The ALJ is directed to address the requirements of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), on remand in light of this finding. In *Mascio*, the Fourth Circuit Court of Appeals held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638. The Fourth Circuit Court of Appeals distinguished the ability to perform simple tasks from the ability to stay on task, and explained that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine tasks or unskilled work." *Id.* Thus, a case must be remanded pursuant to *Mascio* when: 1) a finding of mental limitation in concentration, persistence, or pace is not reflected in the RFC; 2) the mental limitation was not incorporated into the hypothetical given to the VE; and 3) the ALJ did not sufficiently explain the exclusion of such mental limitation.

evaluating a claimant's subjective complaints. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. *Id.* If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individual's ability to work. *Id*. at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. *Id*. at 595–96. SSR 96–7p states that the evaluation of a plaintiff's subjective complaints must be based on the consideration of all the evidence in the record, including, but not limited to: (1) medical and laboratory findings, (2) diagnoses and medical opinions provided by treating or examining physicians and other medical sources; (3) statements from both the individual and treating or examining physicians about the claimant's medical history, treatment, response, prior work record, and the alleged symptoms' effect on the ability to work.

In the instant case, the ALJ, following the two-step analysis under *Craig*, determined that Plaintiff's medically determinable impairments could reasonably cause some of her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. [R. 23.] The ALJ discussed the medical evidence related to Plaintiff's right knee injury and her activities of daily living [R. 23–24], but did not sufficiently discuss Plaintiff's alleged limitations due to her pain. The ALJ merely noted that on two occasions in the medical record Plaintiff had complained of pain. [R. 24.]

While the record is replete with evidence of Plaintiff's many chronic pain complaints, and the number of medications she takes for pain, the ALJ failed to offer any explanation as to how this evidence informed any portion of his decision (*e.g.*, Plaintiff's alleged inability to stand for long periods of time [*see* R. 38]; the amount of pain she experiences during the day [*see* R. 45]; or pressure she feels when standing to long and the feeling that her knee will give out [*see* R. 48]).

Additionally, while the ALJ dismissed outright the opinion of Plaintiff's rehabilitation counselor, certified in vocational evaluation, due to her status as an "other source"[12] rather than a medical source, the ALJ was still required to "explain the weight given to opinions from ... 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p, 2006 WL 2329939, at *6. The ALJ's failure to discuss his weighing of this opinion (rather, his decision to disregard this opinion) hinders the Court's ability to determine whether the ALJ's decision is supported by substantial evidence.

**Remaining Allegations of Error**

The Court has found sufficient basis to remand this matter based on the ALJ's failure to consider Plaintiff's impairments in combination, failure to consider Plaintiff's low IQ under

---

[12]Health care providers who are not "acceptable medical sources" but instead "other sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06–03p, 2006 WL 2329939, at *2. "Other sources" also include educational personnel, family members, public and private social welfare agency personnel, and rehabilitation counselors. *Id*.; *see also New v. Colvin*, C/A No. 6:14-291-BHH-KFM, 2015 WL 5671789, at *20 (D.S.C. Sept. 25, 2015).

Listing 12.05C, and failure to properly consider Plaintiff's pain complaints. The ALJ is also directed to consider Plaintiff's moderate limitations in concentration, persistence and pace in accordance with *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Additionally, on remand, the ALJ should take into consideration Plaintiff's remaining allegations of error.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

May 25, 2017                                  s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge